**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| ZHEJIANG DINGLI MACHINERY CO., LTD., Plaintiff, v. UNITED STATES, Defendant. | Court No. 26-02985 |

**COMPLAINT**

Plaintiff Zhejiang Dingli Machinery Co., Ltd. ("Dingli"), by and through its undersigned counsel, hereby alleges and states as follows:

**ADMINISTRATIVE DETERMINATION TO BE REVIEWED**

1. Dingli seeks review of the *Final Results* of the U.S. Department of Commerce, International Trade Administration (the "Department"), in the second administrative review ("AR2") of the antidumping duty ("ADD") order on certain mobile access equipment and subassemblies thereof from the People's Republic of China ("China"), covering the period April 1, 2023 through March 31, 2024, published as *Certain Mobile Access Equipment and Subassemblies Thereof from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2023-2024*, 91 Fed. Reg. 20,401 (Apr. 16, 2026) ("*Final Results*").

2. The challenged determinations, findings, and conclusions are set out primarily in the Department's Issues and Decision Memorandum (Apr. 13, 2026) ("IDM") and Final Analysis Memorandum (Apr. 13, 2026), accompanying the *Final Results*, 91 Fed. Reg. 20,401.

**JURISDICTION**

3. This action is filed pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii) to contest the *Final Results* issued by the Department in AR2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

**STANDING OF PLAINTIFF**

4. Dingli is a foreign producer and exporter of mobile access equipment from China that was selected as a mandatory respondent in AR2. Dingli participated in the Department's proceeding that resulted in the challenged determination and is subject to the *Final Results*. Therefore, Dingli is an interested party as described in 19 U.S.C. § 1677(9)(A) and has standing to bring this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

**TIMELINESS OF THE ACTION**

5. Parties to actions challenging Department determinations pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) regarding administrative reviews, must file the summons within 30 days of the date of publication in the Federal Register of the notice of determination. 19 U.S.C. § 1516a(a)(2)(A)(i). The Department published the *Final Results* on April 16, 2026.

6. This action was commenced on May 18, 2026, within 30 days of the date of publication of the *Final Results* per USCIT Rule 6(a)(1)(C), by the filing of a Summons. This Complaint is timely filed within 30 days of the filing of Dingli's Summons. Therefore, both the Summons and the Complaint have been timely filed in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and pursuant to Rules 3(a)(2) and 6(a) of the Rules of this Court.

**BACKGROUND**

7. The Department issued the original ADD order on mobile access equipment from China on April 14, 2022. *Certain Mobile Access Equipment and Subassemblies Thereof from the*

*People's Republic of China: Antidumping Duty Order,* 87 Fed. Reg. 22,190 (Apr. 14, 2022).

8. On June 12, 2024, the Department initiated AR2 with respect to a number of companies including Dingli. *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 89 Fed. Reg. 49,844 (June 12, 2024).

9. In AR2, the Department individually examined the sales of Dingli, which participated by providing the Department with responses to questionnaires, factual information, and arguments concerning the review. By its preliminary results published on Aug. 8, 2025, the Department preliminarily assigned Dingli an ADD rate of 9.75 percent. *Certain Mobile Access Equipment and Subassemblies Thereof From the People's Republic of China: Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review; 2023–2024,* 90 Fed. Reg. 38,458 (Aug. 8, 2025) ("*Preliminary Results*").

10. The Department preliminarily selected Türkiye as the primary surrogate market economy ("ME") country for China, from which the values of the mandatory respondents' factors of production ("FOP") were derived to calculate normal value. Accordingly, the Department used data from Turkish financial statements to calculate financial ratios. Decision Memorandum (Apr. 5, 2025), accompanying *Preliminary Results,* 90 Fed. Reg. 38,458, at 22-23.

11. The Department also preliminarily determined that 97.7 percent of the value of Dingli's U.S. sales pass the price difference test, based on the results of the differential pricing analysis. *Id.* at 16. As a result, the Department preliminarily applied the average-to-transaction ("A-T") method to all U.S. sales to calculate the weighted-average dumping margin for Dingli. *Id.*

12. Finally, the Department, in its *Preliminary Results*, chose to deduct Section 301 duties from Dingli's U.S. sales prices when calculating Dingli's dumping margin. *See* Dingli

Preliminary Analysis Memorandum (Aug. 5, 2025), accompanying *Preliminary Results,* 90 Fed. Reg. 38,458.

13. Throughout AR2, Dingli placed surrogate value information on the record for the Department's use in valuing FOPs, including steel inputs. On January 2, 2026, Dingli filed a revised administrative case brief requesting that the Department change its selection of the primary surrogate ME country from Türkiye to Bulgaria to accurately calculate surrogate FOP values. Dingli Administrative Case Brief (Jan. 2, 2026), at 6-29. Dingli also requested that the Department use Bulgarian financial statements, rather than Turkish, to value financial ratios. *Id*. at 23-29.

14. Dingli also placed information on the record showing that the Department's price difference test, which uses a two percent threshold for implementing "A-T" calculation methodology, is legally unsound. *Id*. at 54-55. In its administrative case brief, Dingli requested that the Department apply the average-to-average ("A-A") method to all of Dingli's U.S. sales in the *Final Results*, rather than the A-T method. *Id*. at 54-57.

15. Lastly, in its administrative case brief, Dingli requested that the Department not deduct Section 301 duties from its U.S. sales prices. *Id*. at 46-54.

16. On April 16, 2026, the Department published its AR2 *Final Results* and accompanying IDM, rejecting Dingli's arguments by maintaining Türkiye as the surrogate ME country for China and continuing to use Turkish, rather than Bulgarian, financial statements for its calculations. IDM at 22-33. The Department also determined that Dingli's arguments concerning the Cohen's *d* test and the Department's price difference test replacing Cohen's *d* were moot. *Id*. at 85-86. Ultimately, the Department relied on the A-A method to calculate Dingli's weighted average dumping margin. *Id*. Finally, the Department rejected Dingli's arguments pertaining to

the inclusion of Section 301 duties and continued to deduct them from Dingli's U.S. sales prices. *Id*. at 82-85.

17. As a result, the Department, in its *Final Results*, assigned Dingli an ADD rate of 18.27 percent.

## STATEMENT OF CLAIMS

### COUNT ONE

18. Paragraphs 1 to 17 are adopted, incorporated, and realleged here by reference.

19. The Department's selection of Türkiye as the surrogate ME country for China in AR2 is unsupported by substantial evidence and otherwise not in accordance with law. Bulgaria satisfied both statutory criteria by being economically comparable to China and having significant production of mobile access equipment. The Bulgarian data was demonstrably superior to that of Türkiye, as evidenced by the record data showing hyperinflation, and skewed exchange rates, resulting in the existence of a Particular Market Situation in Türkiye.

### COUNT TWO

20. Paragraphs 1 to 17 and 19 are adopted, incorporated, and realleged here by reference.

21. The Department's selection of Turkish financial statements in AR2 is not supported by substantial evidence and not in accordance with law because the Turkish financial statements used in the *Final Results* are distortive, as expenses and revenue were not adjusted for hyperinflation, and the ratio calculations contain errors.

### COUNT THREE

22. Paragraphs 1 to 17, 19, and 21 are adopted, incorporated, and realleged here by reference.

23. The Department's rejection of Bulgaria as the primary surrogate country choice in AR2 is not supported by substantial evidence and not in accordance with law because record evidence

shows that Bulgaria provides undistorted and product-specific surrogate value data on a per kilogram basis for all material inputs and non-material inputs (*e.g.*, domestic inland freight) as well as undistorted financial statements of comparable merchandise producers that Türkiye failed to offer.

**COUNT FOUR**

24. Paragraphs 1 to 17, 19, 21, and 23 are adopted, incorporated, and realleged here by reference.

25. The Department's calculation of surrogate marine insurance movement expenses is unsupported by substantial evidence and not in accordance with law because: (1) PAF Marine Insurance's "Motorcycles and Autos" category includes commercial vehicles that are not comparable to MAE; (2) record evidence fails to demonstrate that Dingli or its competitors pay for "all risk" marine insurance coverage; and (3) the Department erred by adding shipping and freight expenses to the price of merchandise before applying the ad valorem marine insurance rate.

**COUNT FIVE**

26. Paragraphs 1 to 13, 15, 17, 19, and 21 are adopted, incorporated, and realleged here by reference.

27. The Department's decision to deduct Section 301 duties from Dingli's U.S. sales prices when calculating Dingli's dumping margin is unsupported by substantial evidence and not in accordance with law because: (1) Section 301 duties are not "United States Import Duties" for purposes of 19 U.S.C. § 1677a(c)(2)(A); (2) Section 301 duties are "Special Duties," which should not be deducted from the U.S. sales price; (3) deducting Section 301 duties would likely "Double-Count" antidumping duties; (4) deducting Section 301 duties from the U.S. price is

procedurally defective and contrary to the United States's World Trade Organization obligations.

**COUNT SIX**

28. Paragraphs 1 to 17, 19, 21, 23, and 27 are adopted, incorporated, and realleged here by reference.

29. The Department's selection of HS headings for certain inputs, including "D MOTOR 1 OVERO 75 KW AC," "ST BASE WELDMENT," "MOTOR CONTROLLER," "CONTROL ASSEMBLY," "ST FLAT," "ST PLATE 3TO4 75 PR," "multiple fabricated parts {CAST ROD WELDMENT, CHASSIS WELDMENT, PIVOT SHAFT SCISSORASSY, PLATFORM STWELD PARTS, SCISSOR SASSY STWELD, SCISSORPLATFORM CYLINDER, ST BRACKET WELDMENT, ST COVER WELDMENT, STEERASSY STWELDMENT, and WORK PLATFORM STWELD}," "FOREARM ST ARTICLE," "ROLLER BRACKET ST ARTICLE," "TRACK ST ARTICLE" are unlawful as they are not the best available information and are unsupported by substantial evidence because the headings cover inputs that are not comparable to Dingli's inputs in terms of physical characteristics, or end-use, as demonstrated by CROSS rulings and other record evidence.

**COUNT SEVEN**

30. Paragraphs 1 to 17, 19, 21, 23, 27, and 29 are adopted, incorporated, and realleged here by reference.

31. The Department's application of the price difference test to Dingli's U.S. Sales is unsupported by substantial evidence and not in accordance with law for several reasons, including the following: (1) the Department's two percent price difference threshold for rejecting the A-A calculation method and adopting the A-T calculation method is arbitrary and incompatible with the statutorily required "significant" difference standard; and (2) the

Department incorrectly applies its "ratio test" conjunctively, thus requiring a pattern of prices differing significantly among purchasers, regions, and periods of time.

**COUNT EIGHT**

32. Paragraphs 1 to 17, 19, 21, 23, 27, 29, and 31 are adopted, incorporated, and realleged here by reference.

33. For valuing domestic inland freight (import and export), the Department's selection of Doing Business in Turkey 2020 report is unsupported by substantial evidence and not in accordance with law. This is because the Department applied an extremely high and distortive PPI inflator of 6.45, caused by hyperinflation, when adjusting the 2018-19 data to render it contemporaneous with the POR. In contrast, Bulgaria's PPI inflator for the same period is reasonable and realistic at 1.40. As such, the Department erred by not relying on Doing Business in Bulgaria 2020 truck freight data, reported in a secondary surrogate country.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

(a) hold that the Department's *Final Results* are unsupported by substantial evidence and otherwise not in accordance with law;

(b) remand the *Final Results* with instructions to issue a new determination consistent with this Court's decision; and

(c) provide such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Dharmendra N. Choudhary*
Ned H. Marshak*
Dharmendra N. Choudhary
Jordan C. Kahn

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

*599 Lexington Avenue, Floor 36
New York, New York 10022
(212) 557-4000
-and-
1201 New York Ave., NW, Ste. 650
Washington, DC 20005
(202) 783-6881

*Counsel to Plaintiff Zhejiang Dingli Machinery Co., Ltd.*

Dated: June 17, 2026

**CERTIFICATE OF SERVICE**

I certify that copies of the Complaint, filed on June 17, 2026, in Case Number 26-02985 were served by certified mail, return receipt requested, on this June 17, 2026, upon each of the interested parties listed below.

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
**U.S. Department of Justice**
Room 346
26 Federal Plaza
New York, New York 10278

Director, Civil Division
Commercial Litigation Branch
**U.S. Department of Justice**
1100 L Street, NW
Washington, DC 20530

General Counsel
Office of the Chief Counsel for
Import Administration
**U.S. Department of Commerce**
14th Street & Constitution Ave., NW
Washington, D.C. 20230

Laura El-Sabaawi, Esq.
**Wiley Rein LLP**
2050 M Street, NW
Washington, DC 20036

Matthew J. McConkey, Esq.
**Mayer Brown, LLP**
1999 K Street, NW
Washington, DC 20006

Xiaohua Hou
**Xuzhou Construction Machinery Group Imp. & Exp. Co., Ltd.**
Commerce & Finance Law Offices
12-14th Floor, China World Office 2, No. 1
Jianguomenwai Avenue, Beijing 100004,
China

Si LI
**Hunan Sinoboom Intelligent Equipment Co., Ltd.**
Zhonglun Law Firm
20 Jin He East Avenue
Chaoyang District
Beijing 100020, P. R. China

*/s/ Dharmendra N. Choudhary*
Ned H. Marshak*
Dharmendra N. Choudhary
Jordan C. Kahn

GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP

*599 Lexington Avenue, Floor 36
New York, New York 10022
(212) 557-4000
-and-
1201 New York Avenue, NW
Suite 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiff Zhejiang Dingli Machinery Co., Ltd.*

15259103_2